Labatjve, J.
The plaintiff claims of the defendants $2,494 98, proceeds of a cargo of lamber shipped, as he alleges, by him per. schooner Mabel, in 1862, to New Orleans, to Mr. Elliott, with instructions to sell the same, and deposit the proceeds with the defendants, subject to his orders.
The defendants answer, that on the 8th November, 1862, John R. Elliott remitted to them for account of S. H. Gilman $2,494 98, which sum was the net proceeds of a cargo of lumber consigned by said Gilman, to be sold for his account, and the said proceeds to be applied to his credit at D. DeGoicouria & Co. That in accordance with said instructions, the said sum was applied to the credit of the aforesaid S. H. Gilman, who still stands indebted unto the firm of D. DeGoicouria & Go. in the sum of $3,456 95.
The Court below, after hearing the evidence, gave judgment for defendants, and the plaintiff appealed.
It appears that said cargo of lumber was shipped by S. H. Gilman, on board schooner Mabel to J. R. Elliott to be sold, and when sold, the proceeds to be handed to the defendants. Gilman, being asked where was the lumber from, answered that it was from Dr. Taylor’s mill. When Elliott deposited the money, he did not direct the defendants to place it to the credit of any one, but simply handod it over to them, taking a receipt of the following tenor:
“Received, New Orleans, 10th November, 1862, of Jno. R. Elliott, twenty-four hundred and ninety-four dollars and ninety-eight cents, amount net proceeds of sale of lumber, schooner Mabel, of 10th ult., $2,494 98.”
(Signed) “D. DeGoioouniA &Co.”
The money was entered on the books of defendants to the credit of S. H. Gilman.
S. H. Gilman, to whose credit the money was deposited, testified in substance, that he brought the lumber for plaintiff, which was delivered by his (plaintiff’s) order to Mr. Elliott, with instructions to have the same sold, and the money deposited with defendants, subject to plaintiff’s orders, and that the lumber was the plaintiff’s.
This witness is uncontradicted and unimpeached, and we are bound to believe him, and no attempt has been made to show that the lumber belonged to Gilman; the mere deposit in his name of the money, under the circumstances, as explained, cannot make him the owner of the lumber and of the proceeds, The only question before us is as to who was the owner of the lumber between Gilman and the plaintiff. We are of opinion that the lot of lumber belonged to the plaintiff, and that the deposit in the name of Gilman, without plaintiff’s consent or participation, efrd not divest him of his.right to the proceeds.
It is therefore ordered and decreed that the judgment appealed from be annulled and avoided; and it is further ordered and decreed that the defendants pay in solido to the plaintiff the sum of twenty-four hundred and ninety-four dollars and ninety-eight cents, ($2,494 98) with legal interest, from judicial demand, to wit: from the 8th of December, 1865, and costs of suit in both courts.
*32 Application for a Rehearing, by defendants and appellees. — The appellees, believing that they are grievously injured by the decree of this Honorable Court lately rendered against them, reversing the judgment of the Honorable the Fourth District Court, in the above-entitled suit, respectfully submit the considerations on which they presume to ask, and expect to obtain, a rehearing of this cause, as prayed for in the petition filed herewith.
They were cast in this appeal, not, as they believe, on account of any demerits of their defence, but because the Court has taken into consideration only the testimony of S. H. G-ilman, indepedently of the other evidence contained in the record. These applicants think that Your Honors have overlooked the fact shown by the record, that B. F. Taylor is a complete stranger, and was unknown to these petitioners up to the institution of this suit. That his agent, S. II. Gilman, to whom was entrusted the cargo of schooner Mabel, the property of Taylor, to be sold in New Orleans, received certain instructions from his principal, Taylor. Those instructions were that Gilman should deliver to Mr. Elliott, a lumber dealer, the lumber brought over from Taylor’s mills per schooner Mabel, the same to be sold by Elliott, and the proceeds to be deposited with defendants, subject to Taylor’s orders.
There was then a direct mandate, Taylor to Gilman. Gilman was the legally constituted agent of Taylor. Did he comply with the instructions given him?
He says that he did, and as Your Honors very judiciously remark, his testimony is unimpeached, and must be believed. He says that he brought the quantity of lumber spoken of per schooner Mabel for plaintiff; that he delivered it to Mr. Elliott, with instructions to have the same s>ild, and the money deposited with DeGoicouria & Co., subject to plaintiff’s orders.
The mandate of Taylor to Gilman contained a power to substitute. Gilman fulfils his mandate, and substitutes Elliott in his stead. So far so well.
Elliott is now the mandatory of Taylor. Does he comply with the instructions given him? We are of opinion that the question is answered negatively by the testimony of Elliott himself, and by that of Harang.
Disregm-ding his instructions, without any notice of said instructions having ever been brought home to DeGoicouria & Co., Elliott, in disobedience of his orders, deposits with DeGoicouria & Co., innocent third persons, the proceeds to Gilman’s credit, acting throughout the whole transaction as if Gilman was the owner of the lumber, and of the proceeds thereof.
The good faith of DeGoicouria & Co. has evidently been surprised. They, at all times, thought that Gilman was the owner of the amount deposited with them by Elliott to his (Gilman’s) credit. Their accounts with Gilman were at the time of the deposit about even. The deposit thus made encourages them to give a further credit to Gilman, and when this suit is instituted Gilman is still indebted to DeGoicouria & Co. The proceeds thus deposited go to his credit, and extinguish his debt. If Gilman had been in good faith, he should afterwards have brought to the knowledge of these applicants that the deposit was made for Taylor, and for his account. But he ratifies the acts of Elliott, by tacitly adhering ■thereto.
If a principal were allowed to claim from third persons moneys deposited to an unfaithful agent’s credit, in commercial matters, the spirit of confidence which should animate commerce would be destroyed, completely annihilated. Business would be impossible.
It was the duty of Taylor to select agenls who would carry out his instructions. We were entirely ignorant of mandate prior to this suit, and should not be made liable. The right of action of Taylor is not against DeGoicouria & Co., but against Elliott. Art. 2971, C. C.; 2972 C. C.; 7 M. 101; 2 N. S. 367; 4 L. 28; 11 R. 81.
“ One who entrusts another with blank signatures, to be filled up with *33 promissory notes, is bound by those issued by the agent, even if he apply the proceeds to his own use.” Dicks vs. O’Conner, 5 N. S. 550.
May we not apply the language used by the Court in this ease?
Taylor trusted Gilman and Elliott. Elliott either willingly or inadvertently abused Taylor’s confidence by not obeying his instructions. Taylor must bear the consequences of his indiscretion, and not DeGoicouria Ac Co. It seems to us that Taylor cannot throw on DeGoicouria & Co. the-loss which his agent causes him. Bee also 12 A. 276.
These proceeds having gone to the extinguishment of Gilman’s debt towards DeGoicouria & Co., Taylor cannot now make DeGoicouria & Co. liable for that amount, they having acted in good faith, á A. 19.
Rehearing refused.